MARK J. ROSENBAUM (State Bar No. 167168)
  mrosenbaum@wrslawyers.com
ELSA HOROWITZ (State Bar No. 195689)
  ehorowitz@wrslawyers.com
WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
11400 West Olympic Boulevard, 9th Floor
Los Angeles, California 90064-1582
Telephone:   (310) 478-4100
Facsimile:   (310) 479-1422

Attorneys for Defendant
Dyer 18 LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| CITY OF SANTA ANA, a charter city and municipal corporation,<br><br>        Plaintiff,<br><br>    vs.<br><br>DYER 18 LLC, a Delaware limited liability company, and DOES 1 through 10 inclusive,<br><br>        Defendants. | Case No. 8:22-cv-00433-DOC-(JDEx)<br><br>The Hon. David O. Carter<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF AND DECLARATIONS IN SUPPORT OF SAME**<br><br>**[*Federal Rule of Civil Procedure, Rules 12(b)(1) and 12(b)(6)*]**<br><br>**[*Request for Judicial Notice Filed Herewith*]**<br><br>**Date:**    July 25, 2022<br>**Time:**    8:30 a.m.<br>**Place:**    Courtroom 10A<br><br>Action Filed:    March 21, 2022<br>Trial Date:    None |

## TO PLAINTIFF CITY OF SANTA ANA, A CHARTER CITY AND MUNICIPAL CORPORATION AND ITS ATTORNEY OF RECORD:

**PLEASE TAKE NOTICE THAT** that on July 25, 2022, at 8:30 a.m., or as soon as thereafter the matter may be heard, in the United States District Court for the Central District of California, Southern Division, Courtroom 10A, 411 West 4th

`

Street, Santa Ana, CA 92701, before the Honorable David O. Carter, defendant Dyer 18 LLC, a Delaware limited liability company ("Dyer") moves, under *Federal Rules of Civil Procedure* ("*FRCP*") Rule 12(b)(1) and 12(b)(6) to dismiss the claims against him in the complaint because the Court lacks subject matter jurisdiction, the City of Santa Ana failed to state a claim upon which relief can be granted, and the claims asserted herein are moot.

Moreover, as detailed hereinbelow, this Motion should be granted because the City has improperly commenced this action in an attempt which appears to be for the sole purpose of circumventing and chilling Dyer's rights to enforce the terms and conditions of the parties' Lease Agreement (as defined herein) which Lease Agreement the City has admittedly breached.  Now, rather than defend itself in one jurisdiction, Dyer is forced to defend itself in the State Court and Federal Court on claims and issues arising out of the exact same facts and circumstance – all while facing the City's baseless claims and attempts to muddy Dyer's reputation – which not only threatens to interfere with its efforts in Santa Ana but other cities and counties throughout California wherein it has built or is seeking to build additional homeless shelters.

On June 7, 2022, this Court entered to order substituting Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP as counsel for defendant Dyer in this action. [Dkt. #41].

On June 8, 2022, the undersigned counsel for Dyer reached out to Mr. Funk, counsel for the City of Santa Ana (the "City") and requested a further extension to file a responsive pleading by way of stipulation and discuss other matters.  Although Mr. Funk indicated he was willing to do so, he stated that he had to check with his client, the City for approval.  Later that same afternoon, **Mr. Funk informed the undersigned that the City was unwilling to stipulate to a further extension for Dyer to file a responsive pleading**.  In return, the undersigned stated this motion would be filed.  The undersigned is also informed and believes that Cory Baskin, prior counsel for Dyer, previously met and conferred with Mr. Funk about the filing

1    of a motion to dismiss.  [See, Declaration of Elsa Horowitz filed herewith and

2    **Exhibit "A"** thereto.]

3         This motion is based on this notice of motion and motion, the memorandum of

4    points and authorities, the declarations of Elsa M. Horowitz, Esq., and Jeremy

5    Ogulnick, supporting exhibits, request for judicial notice, the pleadings, records and

6    files in this action, and any other matters that may properly come before this court.

7         Respectfully submitted,

8    DATED:  June 13, 2022        WOLF, RIFKIN, SHAPIRO,

9                               SCHULMAN & RABKIN, LLP

10

11

12                         By: _____

13                           ELSA HOROWITZ

                          Attorneys for Defendant Dyer 18 LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION TO DISMISS

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ................................................................................7

II.    STATEMENT OF RELEVANT FACTS ............................................9

III.   THIS COURT LACKS SUBJECT MATTER JURISDICTION, AS THE CITY'S CLAIMS CONCERN STATE LAW MATTERS AND SHOULD BE ADDRESSED THEREIN ...........................................15

    A.   Legal Standard under FRCP 12(b)(1) .................................15

    B.   The All Writs Act Does Not Create Jurisdiction and the City Has Failed to Sufficiently Establish Jurisdiction Thereunder........................16

IV.   THE CITY'S CLAIM CONCERNS STATE LAW MATTERS, THUS THE CITY FAILS TO STATE A COGNIZABLE CLAIM HEREIN..............20

    A.   Legal Standard under FRCP 12(b)(6). ...................................20

    B.   The City Fails to State a Claim for Injunctive Relief Under the All Writs Act, 28 U.S.C. §1651(a) as No Federal Jurisdiction Exists...........21

V.    THIS ACTION IS CLEARLY MOOT ...........................................22

VI.   CONCLUSION ................................................................................23

DECLARATION OF ELSA HOROWITZ ..................................................24

DECLARATION OF JEREMY OGULNICK .............................................27

# TABLE OF AUTHORITIES

<u>Page</u>

## FEDERAL CASES

*Al Nieto v. Ecker*
  845 F.2d 868 (9th Cir. 1988) ................................................................ 20

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ............................................................................. 21

*Balistreri v. Pacifica Police Dep't*
  901 F.2d 696 (9th Cir. 1988) ............................................................... 21

*Biotics Research Corp. v. Heckler*
  710 F.2d 1375 (9th Cir. 1983) ............................................................. 15

*Confederated Tribes v. Bonneville Power Admin.*
  342 F.3d 924 (9th Cir. 2003) ............................................................... 18

*Doe v. I.N.S.*
  120 F.3d 200 (9th Cir. 1997) ............................................................... 15

*Land v. Dollar*
  330 U.S. 731 (1947) ............................................................................. 15

*Lights of Am., Inc. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*
  130 F.3d 1369 (9th Cir. 1997) ........................................................ 16, 20

*McCarthy v. United States*
  850 F.2d 558 (9th Cir. 1988) ............................................................... 16

*McFarland v. City of Clovis*
  163 F. Supp. 3d 798 (E.D. Cal. 2016) ................................................. 21

*Pennsylvania Bureau of Correction v. U.S. Marshals Serv.*
  474 U.S. 34 (1985) ............................................................................... 20

*People of State of Cal. ex rel. Younger v. Andrus*
  608 F.2d 1247 (9th Cir. 1979) ............................................................. 20

*Safe Air for Everyone v. Meyer*
  373 F.3d 1035 (9th Cir. 2004) ............................................................. 15

*Saleh v. Titan Corp.*
  353 F. Supp. 2d 1087 (S.D. Cal. 2004) ............................................... 15

*Segundo Suenos, LLC v. Jones*
  494 F. App'x 732 (9th Cir. 2012) ........................................................ 21

*Sopcak v. Northern Mountain Helicopter Serv.*
  52 F.3d 817 (9th Cir. 1995) ................................................................. 16

*Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*
    594 F.2d 730 (9th Cir. 1979).............................................................. 15

*United States v. Ye*
    436 F.3d 1117 (9th Cir. 2006)...................................................... 17, 18

*Wileman Bros. & Elliott, Inc. v. Giannini*
    909 F.2d 332 (9th Cir. 1990)............................................................. 21

*Wilton v. Seven Falls Co.*
    515 U.S. 277 (1995) ........................................................................ 22


**FEDERAL STATUTES**

28 U.S.C. §1651(a) ........................................................................ passim

*Federal Rules of Civil Procedure,* Rule 12(b)(1)................................. 15, 16

*Federal Rules of Civil Procedure,* Rule 12(b)(6).................................... 20

# I.  <u>INTRODUCTION</u>

As this Court is well aware, the complaint ("<u>Complaint</u>") filed in this action is seeking relief in the nature of mandamus and was commenced on March 21, 2022 by the City of Santa Ana (the "<u>City</u>") against Dyer 18 LLC ("<u>Dyer</u>") purportedly under the provisions of the All Writs Act, 28 U.S.C. §1651(a) (sometimes referred to as the "<u>Act</u>").  Through its Complaint, the City sought a writ of mandamus be issued to force to Dyer to comply with the "settlement agreement in the related federal case entitled *Orange County Catholic Worker et al. v. Orange County et al.*, United States District Court Case No. 8:18-cv-00155-DOC-JDE" (the "<u>OCCW Action</u>" and the settlement agreement therein referenced hereinafter as the "<u>OCCW Settlement</u>") which **Dyer was not a party to**. [Dkt #1, 2:14-17 and Exhibit "B" thereto]

The Complaint purportedly sought to compel Dyer to complete construction of a homeless shelter[1] ("<u>shelter</u>") which Dyer at all times continued working on and which **construction delays were caused solely by the City's failure to sign-off on and approve change orders[2]** as required by the parties' Lease Agreement in addition to delayed approvals from the Department of Building and Safety as well as the Orange County Fire authority -  **none of which is or was under the control of Dyer**.

What is clear here is that the City has an axe to grind with Dyer's representatives, Ryan and Jeremy Ogulnick – this matter is personal as evidenced by the fact that the City wasted no time dirtying the Ogulnicks' and Dyer's name and reputation by issuing an official press-release one day after this action was filed, replete with lies and defamatory statements about their business practices – which

---

[1] Dyer owns the property where the homeless shelter is located and is the City's landlord pursuant to a written Lease Agreement.  [Dkt #1 - ¶1 2:2-7]

[2] Lease Agreement ¶62 "…Any changes to the scope of Work that would increase the "Cost Estimate" **must be approved in writing by Lessee prior to commencement of such extra Work** ("Change Order")."  (Emphasis added)

1   press release is still posted on the City's official website[3] and which continued

2   existence is essentially disregarding this Court's directive to the parties herein that

3   they must cease any and all public commentary regarding this action.  Dyer and the

4   Ogulnicks are, and at all times, have been, dedicated to helping alleviate the homeless

5   crisis plaguing the City and County and have been involved in numerous such

6   projects.  In fact, as this Court is aware, Dyer provided the City with "The Link"

7   shelter in Santa Ana for several years which housed Santa Ana's homeless (and Dyer

8   is currently housing the homeless in its Fullerton homeless shelter) all while the City

9   was and remains in violation of its' OCCW Settlement.  This baseless action has done

10  nothing more than wrongfully threaten to interfere with those efforts to help alleviate

11  homelessness in other projects.

12          Unquestionably, this Court's principal objective is to get (1) as many homeless

13  off the street and (2) the shelter up and running as soon as possible.  From the very

14  inception of this action, Dyer has made clear that the **expeditious completion of the**

15  **homeless shelter has always been its priority.**

16          In refusing to consider or rule on the City's *ex parte* application for a TRO [Dkt

17  #7] filed concurrently with the Complaint and achieve its goals, this Court ordered the

18  parties to participate in mediation.  The Court even required on-site inspections to

19  ensure that there would be no other "issues" preventing completion.  To accomplish

20  those goals, there were stipulations to extend the time to file responsive pleadings

21  which were encouraged and approved by the Court.  Finally, and most recently on or

22  about April 19, 2022, the City signed-off on and approved the requisite change orders

23  thereby allowing construction to proceed in a full capacity.  Interestingly enough,

24  although a temporary certificate of occupancy was issued for the shelter as of May 2,

25  2022 (the first temporary certificate of occupancy) and thereafter on June 3, 2022 (the

26

27  _____

    [3] See, https://www.santa-ana.org/santa-ana-seeks-injunction-to-stop-developers-ploy-

28  to-thwart-homeless-shelter/

-8-
MOTION TO DISMISS COMPLAINT

second temporary certificate of occupancy), and the **shelter is open for business**, **the City which controls the issuance of certificates of occupancy has still failed to issue a permanent certificate of occupancy herein** -  presumably for leverage in this action and what is increasingly appearing to be a personal vendetta against Dyer.

Unfortunately, despite the request, the City has refused to stipulate to a further extension to file a responsive pleading so as to allow for the outstanding issues to be completed/resolved and which has necessitated the filing of this motion.

As detailed below, this action has **never** been properly before this Court for the following reasons:

(1)     The Court lacks subject matter jurisdiction over the City's sole claim for injunctive relief because the entire premise of this action is based on the OCCW Action and OCCW Settlement - of which Dyer was **not** a party;

(2)     The City has failed to state a claim upon which relief can be granted[4] - in fact, it is the City's own failure that caused the instant dispute as it refused to timely approve the new budget delaying construction of the shelter until this Court got involved; and,

(3)     The action is **moot** as the shelter is now open for business and fully operational.

Accordingly, the Court should dismiss the Complaint.

## II.     <u>STATEMENT OF RELEVANT FACTS</u>

On or about June 8, 2020, Dyer completed the purchase of a freestanding industrial building of approximately 29,503 square feet located at 1815 East Carnegie

---

[4] The claims asserted in this action which are contractual issues, should have been asserted in the declaratory relief action which the City commenced on March 3, 2022, against Dyer and which is pending in Orange County Superior Court, as Case No. 30-2022-01248172-CU-MC-CJC ("<u>State Action</u>").  See, the Request for Judicial Notice filed in support of Dyer's Opposition to the TRO on March 22, 2022 ("<u>RJN</u>") [Dkt. #20] attached to which is a copy of the complaint filed in the State Action.  The RJN is incorporated by reference herein as through fully stated herein.

Avenue in the City of Santa Ana ("Carnegie Property")[5].  Dyer agreed to lease the Carnegie Property to the City to serve as a homeless shelter.

The City entered into an agreement with Illumination Foundation to complete necessary improvements and construction of the shelter on the Carnegie Property. "However, due to complications and cost overruns related to the construction, the City terminated this agreement with the Illumination Foundation, and Illumination's own lease directly with Dyer was terminated.  Following a request for additional proposals, the City began to work directly with Dyer on the project."[6]

On or about March 1, 2021, the City and Dyer entered into the long-term Lease Agreement providing for Dyer's completion of all the necessary tenant improvements ("Work") and, upon completion of the Work, the City's use of the Carnegie Property for the shelter.[7]  The Lease Agreement does **not** mention the OCCW Action nor the OCCW Settlement.

The Lease Agreement includes a purchase option, which provides the City with the right to purchase the Carnegie Property from Dyer for approximately $9.2 million beginning in or about April 2022, **provided that the City first have satisfied all of its necessary contractual obligations**. (Id.)  Specifically, Section 39.4(a) of the Lease Agreement states:

> Lessee shall have **no right to exercise an Option**: (i) during the period commencing with the giving of any notice of Default and continuing until said Default is cured, (ii) during the period of time any Rent is unpaid (without regard to whether notice thereof is given Lessee), (iii) during the time Lessee is in Breach of this Lease, or (iv) in the event

---

[5] RJN Ex. 1 ¶26 6:2

[6] RJN Ex. 1 ¶27 6:3-10

[7] RJN Ex. 1 ¶28 6:12-16 and Ex. "A" thereto

> that Lessee has been given 3 or more notices of separate
> Default, whether or not Defaults are cured, during the 12
> month period immediately preceding the exercise of the
> Option. (Id.)(Emphasis added)[RJN Ex. 1 and Ex "A'
> thereto]

As admitted by City in the State Action, the City was in default under the Lease Agreement:

> Among Defendant's claims are that **City made three (3)**
> **late rent payments** in July, September, and October of
> 2021 that constitute a breach of the Lease Agreement
> **because they were made after the first of the month**.

(Emphasis added)[RJN Ex. 1 ¶41 8:22-24].

Although not mentioned by the City in the State Action, the City committed at least five separate additional payment breaches by failing to make timely payment for the construction Work (as provided in Section 62 of the Lease Agreement and which defaults have **not** been cured, and myriad additional defaults and breaches concerning, among other things, its obviation of its insurance obligations under the Lease Agreement, its unreasonable delay in providing Dyer with an estoppel certificate and related paperwork in connection with refinancing the Carnegie Property, and its backdoor attempts to retain Illumination Foundation as the operator of the shelter over Dyer's vociferous objections and despite Illumination Foundation's inept history at the Carnegie Property.[8]  This also included the City reimbursing Illumination Foundation in excess of $3,000,000 for unpermitted work it performed at the shelter without any substantiating invoices. [See, Declaration of Jeremy Ogulnick ("Ogulnick Dismiss Decl.") ¶4, 28:1-4 filed herewith]

---

[8] See, Declaration of Cory A. Baskin filed in support of Opposition to TRO ("Baskin Decl.") [Dkt. #17] which is incorporated by reference herein as through fully stated herein.  (See ¶3)

As a result of the City's breaches and defaults, and under the terms of the Lease Agreement, the City cannot exercise the 'purchase option.[9]

Notwithstanding the City's breaches, in order to preempt any action asserted by Dyer and accept the consequences of its actions, on March 3, 2022, the City filed the State Action seeking a declaration that the purchase option under the Lease Agreement be deemed valid and enforceable. **Clearly, the City was primarily concerned with securing its purchase option  -  not completing the shelter**.  [See, Exhibit "E" to the Request for Judicial Notice in Support of Motion to Dismiss (the "RJN Dismiss Motion") filed herewith].  Moreover, rather than assert all of its purported claims in the State Action (i.e., requesting a TRO/injunction be issued to require the completion of the shelter and assert a cause of action for breach of the Lease Agreement), the City decided to strategically attack Dyer in both state and federal court on claims related to the exact same agreement – wasting judicial economy and causing Dyer to incur excessive attorneys' fees and costs.

Notwithstanding the City's repeated failures to make timely and complete payment for the construction Work necessary to complete the shelter and render it operational, **Dyer continued to diligently proceed with construction of the shelter, working tirelessly during the pandemic, including weekends and overtime, while dealing with labor shortages, supply chain constraints, as well as the intentional hurdles placed by City.**[10] [See, Ogulnick Dismiss Decl. ¶¶5-6 28:5-15]

As admitted in the City's TRO Application [Dkt. #7], on or about March 17, 2022, Dyer's Jeremy Ogulnick became concerned that the project's subcontractors were reporting expenses that were higher than expected due to, among other things, the **City's requests for upgraded and enhanced materials beyond the previously**

---

[9] RJN Ex. 1 ¶4 and Ex. "A" ¶39 thereto

[10] See, Declaration of Jeremy Ogulnick filed in support of Opposition to TRO ("Ogulnick Decl.") [Dkt. #17] which is incorporated by reference herein as through fully stated herein.  (See ¶9)

1    **agreed scope of Work**, increased costs in the supply chain, and **mistakes in the**

2    **City's instructions to various subcontractors**.[11]

3        Mr. Ogulnick promptly and proactively reached out the City, concerned that the

4    costs to complete the shelter would exceed the amount thus far approved by the City

5    Council as detailed in the Declaration of Kenneth Gominsky, Jr. ("<u>Gominsky Decl.</u>")

6    in Support of City's TRO Application[12] (Ogulnick Decl. ¶¶ 3- 4.)  Specifically, Mr.

7    Ogulnick spoke with Terri Eggers, the City's Homeless Services Division Manager,

8    and explained to Ms. Eggers that, pursuant to the Lease Agreement the City was

9    required to approve any and all changes to the project's budget and that Dyer is

10   required to obtain the City's permission before it could proceed with any Work

11   beyond the approved budget.[13]  **Rather than approve the Work - the City delayed -**

12   **which delays caused the claims the City is asserting herein.**  As an aside, this

13   approval process was not new, it was the same process the parties followed on several

14   prior occasions without incident.  In fact, the Lease Agreement requiring the City's

15   budget approval is essential since it is and remains the City's obligation to determine

16   whether or not a cost associated with an increase of scope is in the best interest of the

17   shelter.[14]

18       Notwithstanding the City's breach, Work on the shelter **never stopped**; rather,

19   specific trades/Work which had not been approved by the City temporarily halted (or

20   simply did not begin) pending the City's approval of a revised budget as required

21   under the Lease.[15]  [See, Ogulnick Dismiss Decl. ¶5 28:5-9]

22       On April 6, 2022, following a status conference held on April 6, 2022, Dyer

23

24   _____

     [11] [Dkt. #7 6:7-17]

25   [12] [Dkt. #7 6:18 and Gominsky Decl. ¶¶17-19][Dkt. #17 Ogulnick Decl. ¶¶3- 4]

26   [13] [Dkt. #17 Ogulnick Decl. ¶4] [RJN 1 See Ex. "A" thereto ¶ 62.)

27   [14] [Dkt. #17 Ogulnick Decl. ¶5]

28   [15] <u>Id.</u> Footnote 13.

                        MOTION TO DISMISS COMPLAINT

and the City entered into a stipulation which provided among other things an extension for Dyer to file a responsive pleading and that "City shall have fourteen (14) days from submission by Dyer of all remaining invoices for the "Cost of the Work," as that term is defined in Section 62 of the Lease Agreement between the Parties, to review and pay such invoices." [Dkt. 28 ¶3 2:11-13]

Finally, with the assistance of this Court, on or about April 19, 2022, the City approved the new Work, previously unbudgeted, and all Work continued. [See, Ogulnick Dismiss Decl. ¶6, 28:10-15]

On May 2, 2022, a first temporary certificate of occupancy issued for the shelter. [See, Ogulnick Dismiss Decl. ¶7, 28:16-21 and RJN Dismiss Motion Exhibit "C"]

Commencing, May 4, 2022 the shelter commenced housing homeless. **The City had the ability to house 20 women but only housed approximately 5 to 7 women** presumably because Illumination Foundation was ill-prepared and failed to provide the mechanics, staff and have in place organization necessary to operate – which was one of Dyer's concerns all along. [See, Ogulnick Dismiss Decl. ¶¶8-9, 28:22-27]

On June 3, 2022, a second temporary certificate of occupancy issued for the shelter. [See, Ogulnick Dismiss Decl. ¶10, 29:1-5 and RJN Dismiss Motion Exhibit "D"]

**As of June 3, 2022, the shelter has been fully open for business and able to house its full capacity of 200**.  Notwithstanding such, the City which controls the issuance of certificates of occupancy has still failed to issue a permanent certificate of occupancy.   [See, Ogulnick Dismiss Decl. ¶11, 29:6-9]

The shelter is fully operational, therefore this action moot in its entirety.

/ / /

/ / /

/ / /

# MEMORANDUM OF POINTS AND AUTHORITY

**III.** **This Court Lacks Subject Matter Jurisdiction, as the City's Claims Concern State Law Matters and Should be Addressed Therein**

    **A.** **Legal Standard under FRCP 12(b)(1)**

Mandamus is an inappropriate remedy for the relief sought by the City and **does not** confer this Court with subject matter jurisdiction under either the All Writs Act or 28 U.S.C. §1651(a).  Under the All Writs Act, 28 U.S.C. §1651(a), the Court may issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  However, "[t]he power conferred on a federal court under the All Writs Act must be exercised with caution and restraint."  *Saleh v. Titan Corp.*, 353 F. Supp. 2d 1087, 1093 (S.D. Cal. 2004) (citations omitted).)  The Act **only** preserves jurisdiction that a court has acquired from "some other independent source in law" and does not independently grant jurisdiction.  *Doe v. I.N.S.*, 120 F.3d 200, 204–05 (9th Cir. 1997).

*FRCP* Rule 12(b)(1) allows the Court to dismiss a claim when it lacks subject matter jurisdiction.  A Rule 12(b)(1) motion to dismiss can be determined either facially or factually.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a "speaking motion" attacking the existence of subject matter jurisdiction in fact."  *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).  Moreover, "when considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction. See, e.g., *Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011 n. 4, 91 L.Ed. 1209 (1947) ("when a question of the District Court's jurisdiction is raised ... the court may inquire by affidavits or otherwise, into the facts as they exist."); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983) (consideration of material outside the

1  pleadings did not convert a Rule 12(b)(1) motion into one for summary judgment)."

2  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). The burden of proof on

3  a Rule 12(b)(1) motion is **on the party asserting jurisdiction**.  *Sopcak v. Northern*

4  *Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995).

5      **B.      The All Writs Act Does Not Create Jurisdiction and the City Has**

6              **Failed to Sufficiently Establish Jurisdiction Thereunder**

7          The All Writs Act provides that "all courts ... may issue all writs necessary and

8  appropriate in aid of their respective jurisdictions and agreeable to the usages and

9  principles of law." 28 U.S.C. §1651(a).  It is **not** itself a source of jurisdiction.  "The

10  Supreme Court has long held that the All Writs Act is not itself a source of

11  jurisdiction. See, e.g., *McClung v. Silliman*, 19 U.S. (6 Wheaton) 598, 601–02, 5

12  L.Ed. 340 (1821) (interpreting a predecessor to the All Writs Act as intending to vest

13  jurisdiction only "in cases where the jurisdiction already exists, and not where it is to

14  [sic] courted or acquired, by means of the writ proposed to be sued out").  Thus,

15  courts must possess an independent source of jurisdiction before entertaining a

16  request for a writ of mandamus.  See, e.g., *Stafford v. Superior Ct.*, 272 F.2d 407, 409

17  (9th Cir.1959) ("The All Writs Act ... **does not** operate to confer jurisdiction ... since

18  it may be invoked by a ... court only in aid of jurisdiction which it already has.")."

19  (Emphasis added)  *Lights of Am., Inc. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 130

20  F.3d 1369, 1370 (9th Cir. 1997).  Yet the City relies on the Act to establish

21  jurisdiction.  The City alleges in the Complaint:

22              13.      This Court has jurisdiction to enforce the City

23              Settlement Agreement. Pursuant to the Court's October 7,

24              2019 Order re Dismissal and Retention of Jurisdiction, the

25              Court retained jurisdiction over the City Settlement

26              Agreement for the period of time specified therein, or 3

27              years from the Agreement's effective date of September 23,

28              2019. OCCW Dkt. 357-2 at 3-4; Exhibit B.  [Complaint ¶13

3-4:26-2]

14.     This **Court also has jurisdiction to award the relief sought herein pursuant to the All Writs Act,** which provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate <u>in aid of their respective jurisdictions</u> and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (emphasis added). Federal courts have inherent authority under 28 U.S.C. section 1651(a) to "fashion appropriate modes of procedure" necessary to the exercise of the judicial function. *Harris v. Nelson* 394 U.S. 286, 299 (1969)  (Underline in original; bold Emphasis added)[Complaint ¶14 4:3-10]

In connection with the All Writs Act the "Supreme Court has explained that only 'exceptional circumstances amounting to a judicial usurpation of power will justify the invocation of this extraordinary remedy.'" *United States v. Ye*, 436 F.3d 1117, 1121 (9th Cir. 2006)("*Fei Ye*") (quoting *Will v. United States*, 389 U.S. 90, 95 (1967)).  "The petitioner must show that its right to issuance of the writ is clear and indisputable." *Id.*

The Ninth Circuit applies a five-factor test to determine whether mandamus relief is available under §1651:

(1) whether the petitioner has **no other adequate means** to attain the relief he or she desires; (2) whether **the petitioner will be damaged or prejudiced in a way that is not correctable on appeal**; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules; and (5) whether the

1    district court's order raises new and important problems, or

2    issues of law of first impression. *United States v. Amlani*,

3    169 F.3d 1189, 1193–94 (9th Cir.1999) (citing *Bauman*, 557

4    F.2d at 654–55) (Emphasis added)

5    *Supra, Fei Ye*, 436 F.3d at 1121–22.  Clearly, the City had alternative means to

6    address its concerns – i.e., assert the issues in the already pending State Action as

7    these issues are contractual in nature and subject to the State Court's jurisdiction.

8    There would have been no damage or prejudice to the City.  **What the City has**

9    **accomplished by this action was to force Dyer to defend itself in two distinct**

10   **arenas against claims arising out of the exact same facts and circumstances.**

11   Likewise none of the other factors above support the relief sought herein.  Moreover,

12   the use of the All Writs Act is exceedingly rare.  *Confederated Tribes v. Bonneville*

13   *Power Admin.*, 342 F.3d 924, 930 (9th Cir. 2003).

14        In support of is purported authority to have commenced this action, the City

15   relies on the OCCW Settlement (attached as Ex. "B" to Dkt #1) – again, which Dyer

16   was **not a party to** – and which OCCW Settlement provides in relevant part:

17        The Court shall retain jurisdiction over the OC Catholic

18        Worker Action for a period of three years from the Effective

19        Date for the purposes of (a) overseeing the implementation

20        of this Agreement, and (b) implementing and presiding over

21        the a dispute-resolution process (the "Dispute-Resolution

22        Process") to be established by the Court and to which

23        Plaintiffs and the City hereby consent and agree:

24             5.1    Except as expressly identified in this

25        Agreement, or as may be modified by the Court or the

26        Parties, with the Court's consent, **during the three-year**

27        **period of the Court's continued jurisdiction, this**

28        **Dispute-Resolution Process shall apply to adjudicate any**

1     **and all disputes between, on the one hand, the City, and,**

2     **on the other hand, any homeless individual or**

3     **individuals who consent, at the time of requesting the**

4     **Dispute-Resolution Process**, **to be bound by the Dispute-**

5     **Resolution Process** and the provisions of this Agreement

6     applicable to the OCCW Plaintiffs (including but not limited

7     to the individual OCCW plaintiffs), relating to (a) the

8     implementation of this Agreement, and/or (b) the

9     enforcement of the above-identified Municipal Code

10    sections, or other laws applied against any homeless person

11    arising out of that individual's homeless status, including

12    but not limited to disputes regarding the availability or

13    adequacy of any shelter or shelter services offered to the

14    individual pursuant to Section 4.1 of this Agreement and

15    expressly excluding violations of law relating to conduct not

16    arising from the individual's homeless status ( examples

17    include but are not limited to possession of illegal

18    substances or weapons, trespass on private property, acts of

19    violence, public intoxication, etc.) (collectively, the

20    "Disputes," and individually, a "Dispute"). (Emphasis

21    added)[Dkt #1, Ex. "B" – 9-10:14-8]

22    Clearly, the District Court's jurisdiction **does not** extend to parties not subject

23 to the OCCW Action or "any homeless individual or individuals who consent, at the

24 time of requesting the Dispute-Resolution Process, to be bound by the Dispute-

25 Resolution Process."  Yet, the City would have this Court believe that under some

26 nonsensical reading of the statement: "overseeing the implementation of this

27 Agreement" the District Court's jurisdiction extends to Dyer, however, **no**

28 **reasonable interpretation of that language could find the same**.

Federal courts are courts of **limited jurisdiction** and these limits - whether constitutional or imposed by Congress - cannot be disregarded. *Al Nieto v. Ecker*, 845 F.2d 868, 871 (9th Cir. 1988). "Federal courts are courts of limited jurisdiction, and 'the presumption is that (we are) without jurisdiction unless the contrary affirmatively appears.' *Fifty Associates v. Prudential Insurance Co. of America*, 446 F.2d 1187, 1190 (9th Cir. 1970)" *People of State of Cal. ex rel. Younger v. Andrus*, 608 F.2d 1247, 1249 (9th Cir. 1979).

"The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling. Although that Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." *Pennsylvania Bureau of Correction v. U.S. Marshals Serv.*, 474 U.S. 34, 43, 106 S. Ct. 355, 361, 88 L. Ed. 2d 189 (1985). Furthermore, the All Writs Act can never create jurisdiction; it is available only as a means of invoking jurisdiction that already exists. *Supra*, *Lights of America, Inc.,* 130 F.3d at 1370. The All Writs Act only creates a remedy in an actual case or controversy **within its jurisdiction**, and does not determine jurisdiction. The City commenced this action to seek enforcement of the OCCW Settlement against a **non-party thereto.** There is absolutely no independent jurisdiction under the All Writs Act. The City's Complaint improperly pleads §1651 as a basis for its requested relief and this Court should therefore grant this motion to dismiss in its entirety.

## IV.   THE CITY'S CLAIM CONCERNS STATE LAW MATTERS, THUS THE CITY FAILS TO STATE A COGNIZABLE CLAIM HEREIN

### A.   Legal Standard under FRCP 12(b)(6)

*FRCP* Rule 12(b)(6) allows dismissal where the plaintiff fails to state a claim upon which relief can be granted. "A dismissal under Rule 12(b)(6) may be based on

the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory.  *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir.2011)" *McFarland v. City of Clovis*, 163 F. Supp. 3d 798, 800 (E.D. Cal. 2016).

In determining dismissal, all allegations of material fact are considered true, and reviewed favorably to the non-moving party.  *Wileman Bros. & Elliott, Inc. v. Giannini*, 909 F.2d 332, 334 (9th Cir. 1990).  However, "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' (citations omitted). Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of "further factual enhancement.' (citations omitted)." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir.1984)" *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  Here the allegations in the Complaint are nothing more than conclusions and ignore the facts that **the delay in the completion of the shelter was as a result of the City's bad acts alone.**

B.     **The City Fails to State a Claim for Injunctive Relief Under the All Writs Act, 28 U.S.C. §1651(a) as No Federal Jurisdiction Exists**

The City is seeking the relief on a contract claim that arises under state law (i.e., the Lease Agreement).  See generally, *Segundo Suenos, LLC v. Jones*, 494 F. App'x 732, 734 (9th Cir. 2012).  The contract claims asserted herein are in the purview of the State Court, **not** Federal Court and should have been filed in the State Action.  Moreover, as is evident from Dyer having to defend itself on two fronts, it is uneconomical to itself and the Court to allow or even have considered any injunctive relief herein while another suit was/is pending (i.e., the State Action) involving the same state law issue, Lease Agreement and dispute between the same parties.  (See, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282, 115 S. Ct. 2137, 2140, 132 L. Ed. 2d

214 (1995) where the "Court explained that '[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.' (citations omitted) The question for a district court presented with a suit under the Declaratory Judgment Act, the Court found, is 'whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court.'")

## V.  THIS ACTION IS CLEARLY MOOT

There was never, and certainly not at this time, any basis to maintain this action.  Purportedly, the purpose in commencing this action was for the City to have this Court issue a writ of mandate requiring Dyer to complete the construction of the homeless shelter.  The truth is, that **this action did in fact help expedite the construction of the shelter – by forcing the City to finally do what it was required to do under the parties' Lease Agreement, i.e., sign-off on and approve change orders** so that construction/Work could proceed.

Now, the shelter is completed and is open of business although for some inexplicable reason, the City has only authorized the issuance of a temporary certificate of occupancy (on June 3, 2022).  **The City is the only party that controls the issuance of certificates of occupancy – thus -  as was the case in getting the construction/Work back on scheduled, this is all up to the City.**

Regardless, getting the homeless shelter was the purported goal in having a writ mandamus issued – the shelter is fully operations and up and running.  [See, Ogulnick Dismiss Decl.]

Obviously, the relief and basis for the Complaint is now moot and the Complaint should be dismissed.

/ / /

/ / /

1

## VI.   <u>CONCLUSION</u>

2       For the reasons provided above:  (1) the Court lacks subject matter jurisdiction

3   over this matter; (2) the City has failed to state a claim upon which relief can be

4   granted -  including by the City failing to approve the budget so Dyer was able to

5   move forward and completing the new Work for the shelter; and, (3) the action is

6   moot as the shelter is now open for business.  Accordingly, it is respectfully requested

7   that the Compliant herein be dismissed in its entirety.

8       Respectfully submitted,

9   DATED:  June 13, 2022              WOLF, RIFKIN, SHAPIRO,
                                       SCHULMAN & RABKIN, LLP
10

11

12

13                              By: _____

14                                  ELSA HOROWITZ
                                    Attorneys for Defendant Dyer 18 LLC
15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>DECLARATION OF ELSA HOROWITZ</u>

I, Elsa Horowitz, declare as follows:

1.      I am an attorney duly admitted to practice before this Court.  I am a partner in Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP ("<u>WRSS&R</u>"), attorneys of record for defendant Dyer 18 LLC, a Delaware limited liability company ("<u>Dyer</u>"). I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true.  If called as a witness, I could and would competently testify to the matters stated herein.

2.      On June 6, 2022, WRSS&R filed a substitution of counsel in this action executed by Dyer and Cory A. Baskin, of Witkow Baskin, former counsel for Dyer herein. [See, Dkt. #40].

3.      On June 7, 2022, this Court entered an order substituting WRSS&R as counsel for defendant Dyer herein. [See, Dkt. #41].

4.      On the morning of June 8, 2022, I called John Funk, Sr., Assistant City Attorney for the City of Santa Ana (the "<u>City</u>") to introduce myself, inform him of the order of substitution of WRSS&R being entered by this Court, to inquire whether a settlement conference had been scheduled by the Court as was my understanding and in the interim to request that the parties enter into a further extension to file a responsive pleading by way of stipulation.

5.      During our call, although Mr. Funk indicated he was willing to enter into a further extension to file a responsive pleading by way of stipulation, he stated that he had to check with his client, the City, for approval, which I understood.

6.      Later that same afternoon, Mr. Funk informed me via email that the City was unwilling to stipulation to further extension for Dyer to file a responsive pleading.  In fact, he sent me an email which stated:

> Thank you again for your call this morning.  I just tried to
> ring you but was advised that you were not available, so I
> thought I'd follow up by e-mail if you don't mind.

**The City is not agreeable to a further extension of the current response deadline**.  You are probably aware that there have already been two extensions, **and the shelter remains unfinished**.  If the mediation is scheduled and moves in a positive direction, certainly we can consider stipulating not to begin discovery, etc.

Regards, John  (Emphasis added)

Immediately upon my receipt of the email I responded as follows to Mr. Funk:

I was away from my desk.  Needless to say, I am surprised by your email below.  Please call me at your earliest convenience to discuss.

A true and correct copy of the June 8, 2022 email chain between me and Mr. Funk is attached hereto as **Exhibit "A"** and incorporated herein by this reference.  Exhibit "A" was prepared and maintained by me in the ordinary course of WRSS&R's business practices.  The date and times of the emails accurately state the dates and times the emails were sent and received by me.  I did not get a bounce back from my email to Mr. Funk.  In fact, he called me immediately thereafter.

7.     When I read the email I understood that Mr. Funk's statement that the "the shelter remains unfinished" was inaccurate and untrue.  It was my further understanding that this Court indicated that a further extension to file a responsive pleading would be granted, however I was unable to find an order reflecting the same on the docket.

8.     During my call with Mr. Funk I informed him that in light of the City's refusal to enter into a further extension to file a responsive pleading by way of stipulation, Dyer would have no option other than to proceed with motion practice.  This was the earliest I could meet and confer with Mr. Funk since WRSS&R was only substituted in the prior day and he had only informed me of the City's refusal to provide an extension that same day.

9.      Nevertheless, I am informed and believe, and thereon allege further that prior to WRSS&R being retained, Mr. Baskin previously met and conferred with Mr. Funk about the filing of a motion to dismiss.

I declare under penalty of perjury under the laws of the United States of American and the State of California that the foregoing is true and correct to the best of my knowledge.

Executed June 13, 2022, at Los Angeles, California.

_____
ELSA HOROWITZ

# DECLARATION OF JEREMY OGULNICK

I, Jeremy Ogulnick, declare as follows:

1.     I am an authorized representative of Defendant Dyer 18 LLC ("Dyer") and one of its project managers related to the improvements and construction of the homeless shelter ("shelter") being undertaken by Dyer at the property located at 1815 East Carnegie Avenue in the City of Santa Ana ("Carnegie Property"), which is owned by Dyer and subject to a certain lease agreement (the "Lease Agreement") by and between Dyer and the City of Santa Ana (the "City").  Dyer agreed to lease the Carnegie Property to the City to serve as a homeless shelter.  I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true.  If called as a witness, I could and would competently testify to the matters stated herein.

2.     At all times relevant herein, I have personally overseen the construction, schedules, deadlines for the shelter at the Carnegie Property and completion of all the necessary tenant improvements ("Work").  It is also my responsibility to ensure Dyer obtains the City's approval on any and all changes to the project's budget and the City's permission before Dyer can proceed with any Work beyond the approved budget.   It is also my responsibility to review the status of construction, schedules, budgets, accounting and amounts due to contractors, sub-contracts and from the City in connection with the Work.  Based upon the custom and practices of Dyer, bills, charges, costs, change orders etc. are entered in the books and records related to the Carnegie Property at or about the time the bills, charges, costs, change orders etc. are incurred, received and/or paid.

3.     I have reviewed the books and records for the shelter and the amounts due and owing from the City in connection therewith.  As of the date of this declaration, the City has failed to cure monetary defaults under the Lease Agreement despite demand for payment by Dyer and service of statutory notices to the City regarding the same.

4.       In connection with my responsibilities with the shelter, I have reviewed the prior construction performed by Illumination Foundation and saw that the City reimbursed Illumination Foundation in excess of $3,000,000 for unpermitted work it performed at the shelter without any substantiating invoices from what I have seen.

5.       At no time relevant to the claims asserted by the City herein has Dyer stopped Work.  Rather, the specific trades/Work which were not yet approved by the City were temporarily halted (or simply not begun) pending the City's approval of a revised budget as required under the Lease Agreement, while other construction at the shelter continued.

6.       Finally, with the assistance of this Court, on or about April 19, 2022, the City approved the new and expanded scope of Work, previously unbudgeted, and all Work continued under my direction.  A true and correct copy of the budget approved by the City for the new Work, is attached hereto as **Exhibit "B"** and is incorporated herein by this reference.  Exhibit "B" was prepared and maintained by me in the ordinary course of Dyer's business.

7.       On May 2, 2022, the **first** temporary certificate of occupancy was issued for the shelter.  A true and correct copy of the first temporary certificate of occupancy issued for the shelter dated May 2, 2022 is attached as **Exhibit "C"** to the Request for Judicial Notice in Support of Motion to Dismiss (the "RJN Dismiss Motion") and is incorporated herein by this reference.  Exhibit "C" was maintained by me in the ordinary course of Dyer's business.

8.       On or about May 4, 2022, the shelter commenced housing homeless.

9.       At that time, the **City had the ability to house 20 women, but only housed approximately 5 to 7 women,** presumably because Illumination Foundation (the operator the City had contracted with to operate the shelter) was ill-prepared and failed to provide the mechanics, staff and have in place organization necessary to operate – which were one of Dyer's objections to engaging this operator all along.

10.     On June 3, 2022, a **second** temporary certificate of occupancy was issued for the shelter.  A true and correct copy of the second temporary certificate of occupancy issued for the shelter dated June 3, 2022 is attached as **Exhibit "D"** to the RJN Dismiss Motion and is incorporated herein by this reference.  Exhibit "D" was maintained by me in the ordinary course of Dyer's business.

11.     As of June 3, 2022, the **shelter has been fully open for business and able to house its full capacity of 200.**  Notwithstanding such, the City which controls the issuance of certificates of occupancy has still failed to issue a permanent certificate of occupancy

12.     With the exception of punch list items that do not impact shelter residents, such as an elevator inspection, exterior parking lot gate install, front area landscape and minor items on a punch list items, the shelter is complete and is fully operational.

I declare under penalty of perjury under the laws of the United States of American and the State of California that the foregoing is true and correct to the best of my knowledge.

Executed June 13, 2022, at Los Angeles, California.

_____
JEREMY L. OGULNICK

-29-

DECLARATION OF JEREMY OGULNICK

**<u>PROOF OF SERVICE</u>**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

      At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of .  My business address is 11400 West Olympic Boulevard, 9th Floor, Los Angeles, CA 90064-1582.

      On June 13, 2022, I served true copies of the following document(s) described as:

   **1.**     **NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF AND DECLARATIONS IN SUPPORT OF SAME; AND**

   **2.**     **[PROPOSED] ORDER DISMISSING CASE**

on the interested parties in this action as follows:

John Matthew Funk                Attorneys for Plaintiff
Santa Ana City Attorneys Office     CITY OF SANTA ANA
City of Santa Ana
20 Civic Center Plaza M-29
PO Box 1988
Santa Ana, CA 92702
Telephone: (714) 647-5201
Facsimile: (714) 647-6515
jfunk@santa-ana.org

      **BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

      Executed on June 13, 2022, at Los Angeles, California.


_____
Jean Lee